STATE of Missouri, Plaintiff-Respondent,

v.

Theodore William KELLY, Defendant-Appellant.

No. 53618.

Supreme Court of Missouri,
Division No. 2.

April 14, 1969.

Norman H. Anderson, Atty. Gen., Jefferson City, Daniel J. Matula, Sp. Asst. Atty. Gen., Kansas City, for plaintiff-respondent.

James B. Herd, St. Louis, for defendant-appellant.

FINCH, Presiding Judge.

This is an appeal from a judgment sentencing defendant to imprisonment for seventy-five years following a conviction under the Second Offender Act of robbery, first degree, by means of a dangerous and deadly weapon.

We reverse and remand for a new trial because of the admission in evidence of certain statements by the defendant. Various other alleged trial errors also are asserted by defendant on appeal. No doubt, the State can and will consider them in determining what evidence to offer and the form of instructions on retrial. Arguments of counsel likely will not be the same. We consider it sufficiently unlikely that these will recur that we do not review them herein. Accordingly, we state only so much of the evidence as is necessary to a proper understanding and consideration of the admissibility of the evidence on account of which we reverse and remand.

On the morning of February 14, 1967, at about 11:00 A.M., Arthur Walther was on duty by himself at the Medicare Pharmacy, Inc., at 623 N. Grand Avenue, in St. Louis, Missouri. Defendant came into the store and approached the counter where Walther was standing. When Walther asked what he could do for defendant, the latter came around the counter with a gun in his hand and forced Walther to go into the Prescription Department at the back of the store. There he had Walther drop down to the floor and took from Walther's pocket a billfold which

contained about $20.00 plus various papers. Defendant asked as to the location of the narcotics and was told that they were in the open safe. Meanwhile, an accomplice, Holmes, came in and handed defendant a paper sack from which they took a roll of adhesive tape and bound Walther's wrists and ankles. Then Kelly took the narcotics from the safe and handed them to Holmes. After defendant had been in the store about ten minutes, he and Holmes left. A paper sack, found on the floor after the robbery, was examined by the police and found to contain fingerprints of the defendant.

The defendant was arrested in Kansas City on February 18, 1967. Officer Ronquest went from St. Louis to Kansas City to pick him up, and at the time he took defendant in custody gave him a warning which was sufficient to comply with the requirements set out in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694. Ronquest then brought defendant to St. Louis but did not question him enroute.

After arrival in St. Louis, the defendant was taken to one of the police stations where he was placed in a lineup with two other men. The lineup was viewed by Walther and he identified defendant.

After the lineup, Ronquest took defendant and Walther into an interrogation room in the police station. Ronquest then repeated the Miranda warning to defendant, who responded by saying he understood the warning.

Ronquest then started to interrogate defendant about the robbery of the Medicare Pharmacy. The officer told defendant that he had been identified in the lineup by Walther, the victim, and also that they had his fingerprints. Ronquest then asked defendant if he had anything to say about the robbery, and he replied, "You got me sort of sewed up tight." The officer then asked defendant if he wanted to tell him about the robbery, and Kelly said, "No".

At this point, according to Ronquest and Walther, the questioning of defendant by Ronquest ceased, but the three men remained in the same room at the police station. Both Ronquest and Walther testified that all three of them then had some coffee and that as they sat there drinking the coffee, Walther (who had been told earlier that the police had found his billfold and some bottles of narcotics in a park in Montgomery County) asked Ronquest if he had Walther's wallet in his possession, to which Ronquest answered, "No". Walther then said, "I wonder if my papers are still in there?" to which Ronquest responded that he did not know. Walther then turned to defendant and asked, "Are my papers still in there?" and Kelley answered, "Yes, they are still in there."

Thereupon, Ronquest again entered the conversation by saying to Walther, "How much money did you have in your wallet?" and Walther replied something to the effect that he did not know but he did not think it was too much. Walther then turned to Kelly and asked him how much was in the wallet, and Kelly replied that there wasn't too much. Walther then commented, "It might not have been too much to him, but it was a lot to me."

Over objection, testimony in substantially the above form was received in evidence both from Ronquest and from Walther, and the issue presented is whether or not it was admissible under the rules announced in Miranda v. Arizona, supra.

In Miranda the Supreme Court of the United States said, 384 U.S. 1. c. 473, 86 S.Ct. 1. c. 1627, 16 L.Ed.2d 1. c. 723: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or other-

wise." The State recognizes that defendant exercised his right not to be questioned when he told Officer Ronquest that he did not want to talk about the robbery after he had made the statement that they seemed to have him "sewed up tight". The State's brief states that then "Officer Ronquest as required discontinued his interrogation."

Miranda dealt with custodial interrogation. In the course of the opinion the court said, 384 U.S. 1. c. 444, 86 S.Ct. 1. c. 1612, 16 L.Ed.2d 1. c. 706: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." It is the State's contention that defendant's subsequent statements about the wallet and its contents were made to Walther, a private individual, that they were not made as a result of custodial interrogation, and that Miranda does not apply. This was the position taken by the trial court at the time he admitted the statements into evidence. On the other hand, defendant asserts that after he invoked his privilege of terminating the interrogation, "What then followed was, in effect, custodial interrogation in which a private person became the conduit of the interrogating officer." The brief says that what occurred "was a continued *interrogation in fact* by a lay witness under the pretense of a police 'coffee hour'."

■ We recognize that Miranda is not applicable to statements made to a private witness under circumstances not amounting to custodial interrogation. What occurred here, however, is not such a situation. The defendant was under arrest and in police custody at the police station. After being placed in a lineup, he was taken to a room for interrogation by Officer Ronquest. The officer had the victim of the robbery accompany them from the lineup to the interrogation room. The officer gave defendant the Miranda warning and then started his interrogation. Subsequently, defendant stated that he did not want to talk about the robbery, and direct questioning by the officer ceased. The three men remained in the same room and proceeded to have coffee, but instead of refraining from talk of the robbery, Walther then proceeded to ask the officer if he had in his possession the wallet taken in the robbery. After the questions and answers about this subject which have heretofore been set out, Walther turned to defendant and asked him if the papers still were in the wallet. Defendant replied that they were. Then Officer Ronquest injected a new question by asking Walther how much money he had in the wallet when it was taken. After questions and answers between the officer and Walther, the latter directed a question on that subject to defendant which brought forth an answer from the defendant relative to the amount of money in the wallet.

■ What occurred here really amounted to a continuation, after defendant had stated he did not want to talk about the robbery, of the interrogation initiated by Officer Ronquest. Defendant was still in custody. The three men remained in the same interrogation room in the police station. It is true that Officer Ronquest did not ask any question directly of the defendant, but there was a three-cornered conversation in which he was participating. This occurred within minutes of the direct interrogation of defendant by the officer. This was not a voluntary, noncustodial conversation between Walther and the defendant. It was not a situation in which a suspect talks to another individual and makes statements at a time when he is not under the compulsion of police custody and police interrogation. It is obvious that the limitations on interrogation imposed by Miranda would be rendered meaningless if, under circumstances such as this, the only requirement would be that the officer in the interrogation room not direct any questions directly to the accused. We hold that Miranda is applicable and that the

statements of the defendant about the wallet and its contents were not admissible. They were made after defendant admittedly had stated his desire not to be questioned further about the robbery, and there is nothing in the record to show any waiver by the defendant subsequent to his expression of that desire to terminate interrogation.

Reversed and remanded.

All of the Judges concur.