**People of the State of Illinois, Plaintiff-Appellee, v. Ozie Bazzelle, Defendant-Appellant.**

**Gen. No. 53,356.**

First District, Second Division.

September 29, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (William J. Martin, James B. Haddad, Northwestern University School of Law, and Theodore A. Gottfried, Assistant Public Defender, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Robert McGee, and Scott Cisney, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant was found guilty by a jury of the crime of attempt rape and sentenced to a term of seven to fourteen years in the penitentiary. He appeals.

On the afternoon of June 24, 1967, the prosecutrix, an out-of-town visitor to Chicago, was walking in Grant Park in the vicinity of 800 South Michigan Avenue. A man, whom she later identified as the defendant, approached the prosecutrix and asked her for a dime. She refused the request and sought to avoid him, but he persisted in his solicitations. Defendant then took hold of the prosecutrix's arm and forced her to accompany him to another area of the park, a grassy place behind a concrete wall. When the prosecutrix screamed and attempted to get away, the defendant struck her in the face with his fist several times. The prosecutrix continued to struggle and at one point bit the defendant on the left side of the face, near the jaw. The defendant continued to beat the prosecutrix, and once struck her so hard that she almost lost consciousness.

Both the defendant and the prosecutrix were on the ground, the defendant kneeling on the prosecutrix. The

defendant then raised the prosecutrix's dress, pulled her underpants down to her knees, and placed his knee on top of the undergarment. He then unzipped his trousers and laid down on the prosecutrix with his penis resting on top of her; she testified that she felt his penis moving for about a minute and a half. Defendant then asked the prosecutrix to accompany him for a beer, which invitation she accepted because it appeared it would offer her an opportunity for escape. She was permitted to rearrange her clothing, while the defendant retained a firm grip on her arm. The pair then proceeded a short distance to a place where the defendant retrieved a rusty colored blanket, a silver teaspoon, and a Bible. They then proceeded along a sidewalk, defendant still holding onto the prosecutrix.

After a short walk, the prosecutrix again attempted to escape. Defendant struck her in the face several more times, threw her to the sidewalk and twice struck her head against the concrete. As the defendant momentarily released the girl, she escaped and fled across Michigan Avenue to a hotel. The prosecutrix, who at that point was crying hysterically, told the desk clerk what had happened and to call the police. The prosecutrix then returned to the doorway of the hotel to see if the defendant was still in the vicinity, and she saw him across the street coming from the place from which she had fled. The defendant was still carrying the blanket and the Bible.

A patron in the lobby of the hotel left the hotel and followed the defendant, never leaving him out of sight. He hailed a passing police car and informed the officers of the situation, and the officers took the defendant into custody.

The officers returned the defendant to the hotel and took him into the presence of the prosecutrix, who identified him as her assailant. The period elapsed from the time when the prosecutrix made her escape until the time when the officers brought the defendant to the hotel was two to three minutes. Defendant was then transported to police headquarters at 11th and State Streets where he was interviewed by police officers. The

prosecutrix was also taken to the police headquarters where she again identified the defendant who was seated between police officers. The prosecutrix was then taken to a nearby hospital for medical attention.

The evidence reveals that the prosecutrix's face and mouth were swollen, that both her eyes were blackened, and that she suffered pains about the neck and chest. She testified that she also observed that the defendant had what appeared to be teeth marks on the left side of his face, and that he had several other red marks on his face and red spots on his clothing.

Defendant raises several contentions relating to the admission into evidence of the prosecutrix's in-court identification as having been tainted by certain aspects of the pretrial identifications of the defendant by the prosecutrix. He first argues that absence of counsel at the two pretrial identifications violated his constitutional right to counsel, citing United States v. Wade, 388 US 218, and Gilbert v. California, 388 US 263.

Both viewings of the defendant by the prosecutrix occurred shortly after the commission of the crime and prior to the indictment returned against the defendant in this matter. The Court in People v. Palmer, 41 Ill2d 571, 244 NE2d 173, addressed itself to the question of whether the decisions in Wade and Gilbert required counsel in preindictment situations. The Court determined that those two cases did not require counsel in preindictment confrontations, but that the question of a possible denial of due process of law in such situations would be governed by the principles set out in Stovall v. Denno, 388 US 293, 301–302. (See also Simmons v. United States, 390 US 377, at 382–383, where the Court referred to the Gilbert and Wade decisions and stated that they required that an accused be afforded or allowed counsel at any "critical stage of the prosecution" and that a *post*indictment lineup was such a critical stage.)

■ Defendant argues that the trial court erroneously admitted into evidence the in-court identification without a prior hearing to determine its origin and whether it had been tainted by the two prior preindictment identifications.

Prior to the trial of this matter, the defendant had requested a hearing to determine the circumstances surrounding the two pretrial identifications. Hearing was set for the following morning, but on the following morning opening statements were immediately commenced and the prosecutrix was called to the stand. After practically all of her testimony on direct examination was given, the defendant made mention of the fact that no hearing had been held. The court had already heard the circumstances surrounding the prosecutrix's identification of the defendant at the hotel and stated that it was an on-the-scene identification and that therefore no constitutional issue was involved. Defendant did not thereafter renew his request for a hearing and commenced cross-examination of the prosecutrix, going extensively into the pretrial identifications she had made of the defendant. Under the circumstances there was no error in this regard.

Defendant next argues that the court erred in admitting into evidence the in-court identification of the defendant since the two prior identifications were unnecessarily suggestive and conducive to irreparable mistaken identification. We disagree.

██ ██ If the in-court identification springs from a source independent of the allegedly tainted pretrial identification, it will be admissible as evidence. People v. Blumenshine, 42 Ill2d 508, 513–514, 250 NE2d 152. The prosecutrix was with the defendant from fifteen to twenty minutes before, during, and after the commission of the crime. The evidence is uncontradicted that she had ample time, light, and opportunity to observe the defendant on a face-to-face basis during this period. The prosecutrix testified that prior to her escape from the defendant he had retrieved a blanket and a Bible from the park, and that after her escape and when she pointed out the defendant as her assailant prior to his apprehension, he was emerging from the place from which she had just moments before made her escape, carrying the blanket and the Bible. Observation of the defendant was then kept by a patron of the hotel, who followed the defendant on the street until the police were summoned, and apprehended the defendant. The

prosecutrix testified that she bit the defendant on the side of the face, and that after she identified him at the hotel she noticed what appeared to be teeth marks on the side of his face. Finally, there elapsed only two to three minutes between the time the prosecutrix made her escape from defendant and the time the officers returned him to the hotel. The prosecutrix's identification of the defendant at trial therefore had an origin independent of the two pretrial identifications.

■ Further, the first pretrial identification must be considered to have been an on-the-scene identification due to the rapid sequence of events and the negligible lapse of time between the prosecutrix's escape and the identification at the hotel. On-the-scene identifications have never been condemned by the courts. People v. Moore, 104 Ill App2d 343, 352–354, 244 NE2d 337; People v. Lynch, 111 Ill App2d 52, 65–66, 249 NE2d 649.

Finally, the prosecutrix's testimony concerning the identification at the police station did not prejudice the defendant's right to a fair trial because that identification had been preceded by the on-the-scene identification and by the prosecutrix's independent observations of the defendant before, during and after the commission of the crime.

Defendant next contends that the People failed to prove him guilty of the crime of attempt rape in that they failed to show that he attempted penetration of the prosecutrix's sexual organ with his own.

The crime of "Attempt" is defined by the Criminal Code as:

> "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." Ill Rev Stats 1967, c 38, par 8–4(a).

The crime of "Rape" is defined as:

> "A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape.

· · · · · ·

"Sexual intercourse occurs when there is any penetration of the female sex organ by the male sex organ." Ill Rev Stats 1967, c 38, par 11-1(a) and (b).

When the intent to commit a specific crime is not admitted by the accused, it may be shown by the circumstances surrounding the event. People v. Coolidge, 26 Ill2d 533, 187 NE2d 694. The defendant forced the prosecutrix into a secluded area of a city park; struck her in the face several times; threw her to the ground; kissed her several times; lifted her dress and pulled down her undergarment; exposed his penis; and placed his body upon her body. From this evidence the jury could reasonably have found that the defendant intended to rape the prosecutrix and that by his actions had taken a substantial step toward the fulfillment of that intent. The fact that the defendant placed his knee on the prosecutrix's undergarment which was around her knees was for the jury to consider, in light of the prosecutrix's testimony that it was in that manner that defendant had held her to the ground as he unzipped his trousers.

Defendant also argues that it was error for defense counsel, without prior consultation with the defendant, to stipulate at trial that the prosecutrix had been the victim of an attempt rape. It was stated at trial by defense counsel that the only viable issue was the identity of the attacker. As shown above, sufficient evidence was adduced at trial, apart from the stipulation, from which the jury could reasonably have found the defendant guilty as charged. Furthermore, a review of the record reveals that defendant's defense centered solely around the question of identity. The stipulation was clearly a matter of trial strategy. See People v. Hawkins, 27 Ill2d 339, 189 NE2d 252. The case of People v. Martin, 115 Ill App2d 402, 252 NE2d 722, cited by the defendant is inapposite on its facts.

The final contention raised is that the trial court erred in refusing to give defendant's tendered Instruction Number 12, which reads as follows:

> "It is the duty of the jury to consider the defendant's case as if he were a white man, for the law is the same as to both white and colored men, there being no distinction in principles in respect to color."

The instruction would have informed the jury that the race of the defendant should play no part in their deliberations as to his guilt or innocence. The instruction contained no more than that which People's Instruction Number 6 contained, which was given to the jury:

> "The Court further instructs you that under your oaths, you should not allow sympathy or prejudice to influence you in the least in finding your verdict in this case. In your deliberations you should not be influenced by anything other than the law and the evidence in the case."

There is authority to the effect that an instruction such as that tendered by defendant should be given to the jury. People v. Kirkendoll, 415 Ill 404, 114 NE2d 459; People v. Crump, 5 Ill2d 251, 125 NE2d 615. However, in light of the People's instruction given to the jury relating to sympathy and prejudice and in light of the overwhelming evidence of guilt in the record, we hold that the refusal of defendant's tendered Instruction Number 12 was not reversible error. (See Harrington v. California, 395 US 250.)

For these reasons the judgment is affirmed.

Judgment affirmed.

McCORMICK, P. J. and LYONS, J., concur.