**STATE of Missouri, Respondent,**

v.

**Eddie Earl ROLLINS, Appellant.**

**No. KCD 27129.**

Missouri Court of Appeals,
Kansas City District.

March 3, 1975.

---

Willard B. Bunch, Public Defender Sixteenth Judicial Circuit, Scott Bertram, Certified Law Interm, Kansas City, for appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

SOMERVILLE, Presiding Judge.

A jury found defendant guilty of burglary in the second degree (Section 560.045, RSMo 1969, V.A.M.S.) and fixed his punishment at two years. Allocution was granted, sentence and pronounced, and judgment was rendered and entered accordingly. Defendant timely appealed.

Defendant, ostensibly, presents but one point on appeal. However, the argument portion of defendant's brief, and the state's brief in its entirety, both disclose that the parties, in fact, treated the single point as presenting two distinct issues for appellate review. One, was error committed because of the trial court's failure to grant defendant an evidentiary hearing outside the presence of the jury on his motion to suppress identification testimony? Two, was a "confrontation" between defendant and the victim of the burglary at the scene, following defendant's apprehension and return by two private citizens, so unnecessarily suggestive and conducive to irreparable mistaken identity as to deny defendant due process of law and thereby fatally taint the victim's in-court identification of defendant?

Apposite facts are as follows: During the early afternoon of June 27, 1973, the victim (a female) entered her home at 2529 Monroe Street, Kansas City, Jackson County, Missouri, by way of the back door. Immediately upon entering she observed a man (whom she identified at the trial as the defendant) go from her living room to a hall and then open the front door and flee. It was a "beautiful" day and light conditions inside the victim's home were such that she "could see real good" and

there was nothing to obstruct her vision during the time she first saw defendant inside her home and as he fled. The victim, upon seeing defendant in her home, made inquiry as to who he was. The defendant responded by running out the front door. The victim gave chase, "screaming" as she did so. The defendant ran out into Monroe Street, turned south thereon and continued running. As the victim was chasing defendant south on Monroe Street, and while he was still in sight, a motor vehicle northbound on Monroe Street, which was occupied by two adult male private citizens, stopped and made the following inquiry. "Lady, what is the matter?" The victim replied, "[t]his man was in my house." Whereupon one of the adult males in the motor vehicle stated, "[d]on't worry, I will get him." The two adult males immediately joined the chase in their motor vehicle. Defendant turned east on 26th Street, at which point the victim lost sight of him and discontinued the chase. However, the two adult males, who joined the chase prior to the time defendant turned east on 26th Street, continued in pursuit and apprehended defendant at 27th and Cleveland and returned him to the victim's home. The victim was on the front porch of her home when the defendant was returned. The following conversation ensued after defendant was returned to the victim's home. The victim asked defendant what he was doing in her home, and, according to the victim, defendant replied he was looking for some friends who had lived there nine years ago. There is not a trace of evidence in the record, direct or inferential, that the two adult males apprehended and returned defendant to the victim's home for the purpose of seeing whether or not the victim could identify defendant as the man who had burglarized her home. Defendant, who took the witness stand and testified in his own behalf, stated that he was apprehended by two adult male private citizens after leaving a store "almost on the corner" of 27th and Cleveland Streets, and as he was "running" to catch a bus at 27th and Cleveland. According to defendant, Monroe Street is a block west of Cleveland. He further testified that after being apprehended, he was placed in the motor vehicle of the two private citizens and returned to a residence on Monroe Street (the victim's home). Defendant at no time testified, either directly or by innuendo, that any delay occurred, undue or otherwise, from the time he was apprehended until he was returned to the victim's home. One of the adult males who assisted in defendant's apprehension called the police from the victim's home shortly after arriving there with the defendant. The obvious inference is that the pursuit initiated by the victim, and joined in and completed by the two adult male private citizens, was a continuous pursuit for the sole purpose of apprehending defendant as he was fleeing from the scene. An equally obvious inference is that after defendant was apprehended, he was returned to the victim's home, not for the purpose of a confrontation to see if the victim could identify him, but solely for the purpose of holding him in custody until the police arrived. The police did arrive shortly thereafter and the man was placed under arrest by them. During the course of trial the victim made a positive in-court identification of the defendant as the man she saw inside of and fleeing her home. On cross-examination, she testified in a direct, positive and unequivocal manner that her identification of defendant was based on her observation of him while he was in and fleeing her home, not upon seeing defendant after he was returned to her home by the two private citizens.

Bearing the above facts in mind, attention new focuses on certain procedural aspects brought into issue because of the bifurcated nature of defendant's "single" point on appeal. Approximately a month and a half prior to trial, defendant filed a motion captioned "Motion to Suppress Confrontation". Viewed most favorably to defendant, this motion sought to suppress any in-court identification of defendant by

the victim solely on the basis that the "one on one confrontation" between defendant and the victim at her home, after defendant's apprehension, was per se unnecessarily suggestive and conducive to irreparable mistaken identity, thereby violative of due process of law as guaranteed by the Fourteenth Amendment. Defendant's motion failed to allege any facts to support his contention that the so-called confrontation was "unnecessarily suggestive" or "conducive to irreparable mistaken identity", but, instead, relied solely on the proposition that the "one on one confrontation" was, per se, constitutionally proscribed. Defendant made no effort to call his motion up for hearing prior to the day of trial. On the morning of trial, however, immediately prior to the time the jury panel was to be brought in for voir dire examination, defendant orally requested a hearing on his motion. At this juncture the court made inquiry as to the circumstances surrounding the complained of confrontation. The response of defendant's counsel thereto clearly disclosed that the motion was predicated solely on the proposition that the "one on one confrontation" between the defendant and the victim at her home following his apprehension was per se suggestive, thereby fatally tainting and precluding any in-court identification of defendant by the victim. Defense counsel's response to the court's inquiry as to surrounding circumstances was as silent as the motion itself. Defense counsel at no time alleged any facts surrounding the so-called confrontation indicative of why it was claimed to be "unnecessarily suggestive" or "conducive to irreparable mistaken identity." Throughout, defendant chose to deal in broad, sweeping conclusionary charges rather than allegations of fact. With the matter in that posture, the trial court overruled defendant's motion to suppress and the case proceeded to trial.

Digressing momentarily, the state contends, among other things, that defendant has no meritorious appeal for the reason that "no due process violation existed because no state action was involved." Since all issues involved in this appeal can be pragmatically disposed of within the framework of existing case law involving state action, as hereinafter demonstrated, this court expressly refrains from ruling whether state action was or was not involved in the complained of confrontation. The court's disinclination to do so should not be construed as an implication or inference, either way, respecting whether state action was or was not involved.

 Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), involved a "one on one confrontation" in a hospital between a suspect and a victim who was hospitalized. The suspect was brought to the hospital by police officers. Although recognizing that a confrontation which is "unnecessarily suggestive and conducive to irreparable mistaken identity" constitutes a ground for attacking a conviction on the basis of a denial of due process of law (independent of any claim to right of counsel), the court in *Stovall* held that determination of whether due process of law was denied or violated depended upon the "totality of the circumstances" surrounding the confrontation. Viewing the "totality of the circumstances", the court in *Stovall* concluded that no violation or denial of due process of law had occurred. It appears implicit in *Stovall* that a one on one confrontation, occurring in a non-police atmosphere and in no way related to a "line-up" for prosecutory identification purposes, and otherwise nonsuggestive, is not per se violative of due process of law. The same conclusion appears implicit in State v. Keeney, 425 S.W.2d 85 (Mo.1968), State v. Summers, 445 S.W.2d 369 (Mo.1969), Grant v. State, 446 S.W.2d 620 (Mo.1969), State v. Hamblin, 448 S.W.2d 603 (Mo.1970), and State v. Jackson, 477 S.W.2d 47 (Mo.1972). The foregoing has a direct bearing on defendant's claim that the trial court erred in not granting him an evidentiary hearing outside the presence of the jury on his motion

to suppress. In State v. Jordan, 506 S.W. 2d 74 (Mo.App.1974), defendant, prior to the start of trial, requested permission of the court to make an oral motion to suppress identification which was denied after the trial court made inquiry as to the circumstances of the complained of confrontation. Defendant therein did not ask for an evidentiary hearing on his requested motion to suppress. On appeal, however, he asserted that error was committed by the trial court (1) in refusing to grant his oral motion to suppress (the request to make an oral motion to suppress was apparently treated on appeal as a motion to suppress) and (2) in not holding an evidentiary hearing thereon. In State v. Jordan, supra, as here, defendant's motion to suppress identification consisted of conclusions rather than allegations of fact. The court therein, at page 80, held: "For an evidentiary hearing to be required, allegations supporting the motion to suppress identification testimony must be made and they must be of such a definite and specific nature as to enable a court to conclude that a serious claim was presented. *See* United States v. Allison, 414 F.2d 407, 410[4] (9th Cir. 1969). In other words, motions or requests to make motions must state facts, not conclusions. State v. Parker, 413 S.W.2d 489, 494[6] (Mo.banc 1967), cert. den. 390 U.S. 906, 88 S.Ct. 823, 19 L.Ed.2d 874 (1968)." Also, in State v. Jordan, supra, as here (as previously noted), the trial court made inquiry concerning the circumstances surrounding the complained of confrontation. On appeal, the court, after noting at page 79 of 506 S.W.2d that the trial court had satisfied itself that "no serious constitutional issue regarding . . . identification had been raised", held, page 80, as follows: "When the court has heard the circumstances surrounding an identification and has determined that no constitutional issue is involved, no hearing on a motion to suppress identification testimony is required even though the defendant requested a hearing prior to trial. People v. Bazzelle, 130 Ill.

App.2d 131, 264 N.E.2d 457, 460[2] (1970), cert. den. 404 U.S. 836, 92 S.Ct. 122, 30 L. Ed.2d 68 (1971)." In view of the particular facts presented by the instant case, this court concludes that the trial court did not commit reversible error in failing to give defendant an evidentiary hearing on his motion to suppress. State v. Jordan, supra. In so holding, this court cautions that such should not be construed as condoning or approving the denial of evidentiary hearings outside the presence of the jury on motions to suppress identification (or as to other motions to suppress). Such practice is not recommended. To the contrary, the recommended practice, and in most instances the required practice, and in any event by far the safest and most desirable practice, is to grant such hearings.

■ Attention now turns toward the remaining aspect of defendant's bifurcated point on appeal—was the "confrontation" so unnecessarily suggestive and conducive to irreparable mistaken identity as to deny defendant due process of law and thereby fatally taint the victim's in-court identification of defendant? Initially, emphasis is stressed on the necessity of objectively viewing the so-called "confrontation" for what it actually was, and, as well, for what it was not. The so-called "confrontation" was nothing more than the continuation and natural culmination of a pursuit, joined in and completed by the two adult male private citizens (who eloquently contradicted any popular belief that Good Samaritans no long exist), to apprehend defendant and return him to the victim's home to await arrival of the police. If there is one unequivocal fact evidenced by the record in this case that stands out above all others, it is that defendant was returned to the victim's home solely for the purpose of calling the police and turning him over to them. Antithetically, defendant was not returned to the victim's home for any purpose even remotely related to a confrontation to aid the victim in determining defendant's identity. Defendant has at-

tempted to torture the natural culmination of a continuous pursuit into a constitutionally impermissive confrontation. Viewed in the "totality of the circumstances", Stovall v. Denno, supra, what defendant has attempted to characterize as a "confrontation" does not fall within the protective perimeter of the Fourteenth Amendment. Even if it be assumed that a confrontation for identification purposes did occur (which most emphatically did not occur), defendant, both below and on appeal, failed to allege, much less prove, any "suggestive" facts surrounding the "confrontation" that would indicate even a possibility of mistaken identity, let alone any likelihood of mistaken identity. The victim's in-court identification of defendant was made upon a factual basis completely independent of the so-called confrontation that occurred when he was returned to her home after being apprehended. The victim testified, in positive and unequivocal terms, that her identification of defendant was based on seeing him in and as he fled her home, and in an equally positive and unequivocal manner, she disclaimed that her identification of defendant was in any way predicated upon her observation of defendant after he was apprehended and returned to her home. The record amply supports a finding and determination that when defendant was in and fleeing the victim's home conditions were such that she could and did identify defendant independent of any subsequent observation of him. The foregoing vitiates defendant's assignment of error. See: State v. Parker, 458 S.W.2d 241 (Mo. 1970); State v. Jackson, supra; State v. Ross, 502 S.W.2d 241 (Mo.1973); Mooring v. State, 501 S.W.2d 7 (Mo.1973); State v. McIntosh, 492 S.W.2d 843 (Mo.1973); and State v. Scott, 491 S.W.2d 514 (Mo.banc 1973).

Finding no merit whatsoever to defendant's assignment of error on appeal, the judgment is affirmed.

All concur.