**STATE of Missouri, Respondent,**

v.

**Wyman DENTMAN, Appellant.**

**No. 39938.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 31, 1979.

Robert C. Babione, Public Defender, James B. Ashwell, Andy Kotschar, Asst. Public Defenders, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Jeffrey A. Cowin, Asst. Circuit Atty., St. Louis, for respondent.

REINHARD, Presiding Judge.

Defendant appeals from the judgment of conviction by a jury to the charge of attempted burglary second degree, §§ 556.-150(3), 560.045, 560.095 RSMo. 1969. Subsequent to the jury verdict, the court sentenced defendant under the Second Offender Act to imprisonment in the Department of Corrections for a term of four years.

The record reveals the following scenario culminating in defendant's criminal charge: On the night of April 3 and the early morning of April 4, 1977, Officer Martin Thimling of the St. Louis Police Department was assigned to foot patrol in the downtown area of the city. At approximately 12:15 a. m. Officer Thimling, while walking east in the 700 block of Olive Street, observed several times a four door "brown over white" automobile occupied by three males as it slowly circled that block. Finally the car stopped briefly at approximately 720 Olive Street. At this time the officer noted the description and license plate number of the car and as much of a description of the occupants as possible. Next Officer Thimling, after concealing himself in the recessed doorway of 721 Olive, again observed the car as it proceeded to park in front of 612 Olive Street, the location of the Union Jack Clothing Store. Officer Thimling then watched the driver of the car leave the car, open the trunk of the vehicle, and return to the driver's side of the car and stand at the open car door. Thimling further testified that defendant Dentman exited from the front passenger door carrying an "elongated object, approximately 18–20 inches, dark in color." The third man exited from the right rear door of the vehicle. Thimling related that he was approximately 60–70 yards from the vehicle during this observation.

The two men then left the officer's sight while at the recessed doorway of the Union Jack Store. Thimling continued to observe the driver. When he turned his back to Thimling, the officer left the doorway and ran in the driver's direction. The driver noticed Thimling when he was approximately 50 feet from the car and he then started to yell. The two men responded and exited the doorway. The third man got in the front seat of the car and shut the door. Dentman, who no longer had anything in his hand as he exited the doorway, started for the rear door, still open. He stopped and closed the trunk lid. Thimling by this time was approximately 45 feet from the car. Dentman did not enter the car before it started moving. He lunged for the rear door, took hold of the car, and was dragged along for approximately one block while the car was moving. Thimling testified that Dentman was facing the rear of the car—in the officer's direction—as the car moved away. The officer testified that he was able to discern that defendant was wearing a blue denim jumpsuit.

Thimling broadcast a description of the vehicle, license plate number and description of the occupants as best available. The officer then discovered upon return to the Union Jack Store that a pry bar was jammed in between the doors and that the door glass had been partially cracked.

In response to Thimling's broadcast, a "brown over white" vehicle, fitting the description and bearing the license number as Thimling announced it, was stopped at approximately 1:03 a. m. several miles north of the Olive Street location. The three occupants were then taken to the 4th District Police Station. A confrontation was conducted there between Thimling and Dentman and the other two men. Officer Thimling identified the three men as having been present at the Union Jack Store that night. No other suspects were at the station from whom Thimling might have made his identification.

Defendant first challenges the sufficiency of the information. The information charged that defendant and two other men "did feloniously and burglariously attempt to break and enter a store . . . situated at 612 Olive Street with the intent then and there to steal, take and carry away certain goods . . . when they were intercepted and prevented in the execution of their felonious and burglarious intent, and failed in the perpetration thereof; . . . .".

This offense was committed prior to the effective date of the new Criminal Code. To properly charge an attempt to commit a crime, the information must have contained three elements: (1) the intention to commit the crime; (2) performance of some act toward the commission of the crime; and (3) the failure to consummate its commission. § 556.150 RSMo. 1969; *State v. Fletcher*, 512 S.W.2d 253[2] (Mo. App.1974). Defendant argues that the information charging him fails in that there is no allegation of an overt act toward the commission of the burglary.

The Supreme Court held in *State v. Zammar*, 305 S.W.2d 441[3, 4] (Mo.1957) that the method of gaining entry by forcibly bursting or breaking is important only in first degree burglary; that the allegation "break and enter" is sufficient in a second degree burglary charge. We believe that the allegation in this case " . . . attempt to break and enter a store . . . " is sufficient to generally allege the performance of some act toward the commission of the crime: to-wit, burglary second degree. We must admit that we find no Missouri case law approving or disapproving this language. We do find support, however, in the "Missouri Approved Charges—Criminal".

These indictment and information forms have been approved and adopted by the Supreme Court as proper for use in charges filed under the new Criminal Code.

The present criminal code attempt statute[1] differs in language from that of the prior legislation, § 556.150 RSMo. 1969. The new statute requires, in order to be found guilty of attempt, that the actor perform "any act which is a substantial step toward the commission of the offense". The former statute required proof of commission of "any act toward the commission of [the] offense".

The approved form on attempt is MACH–CR No. 18.02. The "Notes on Use" accompanying this form describe the language for the charge:

4. The conduct required for an attempt is a "substantial step" toward the commission of the object crime. If the conduct constituting the substantial step is actually trying to achieve the result of the object crime, it may be described in general terms, . . . such as "tried to . . . .".

We see no difference in alleging "tried to" or "attempted to".

Defendant here has been apprised by this information that he is charged with attempting to break and enter—an act which is actually trying to achieve the result of the object crime, burglary second degree—the Union Jack Store with the intent to steal goods. The charge is definite and affords defendant an opportunity to meet the charge. Had defendant thought that he needed further enlightenment on the details, he could have availed himself of Criminal Rule 24.03 and requested a Bill of Particulars. *State v. Rentschler*, 444 S.W. 2d 453, 455 (Mo.1969).

A review of the evidence also shows that the state made a strong case on the charge of attempt with intent to commit burglary in the second degree. Defendant's charge as to the sufficiency of the evidence fails.

Defendant next contends that the court "erred in overruling the defendant's motion to suppress identification testimony of Officer Thimling and admitting into evidence Officer Thimling's in-court identification testimony. The testimony of Police Officer Thimling was based on a suggestive pre-trial one-on-one confrontation with the defendant at the Fourth District Police Station. These procedures were so suggestive and conducive to irreparable mistaken identification as to be a violation of defendant's rights to due process of law."

---

1. Section 564.011, RSMo. 1978 provides:

1. A person is guilty of attempt to commit an offense when with the purpose of committing the offense, he does any act which is a substantial step toward the commission of the offense. A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

Judge McMillian, speaking for this court in *Simms v. State*, 568 S.W.2d 801 (Mo.App. 1978), wherein defendant, sitting handcuffed in the back of a patrol car shortly after the arrest, was viewed and identified by the victim, found such identification procedure proper. Judge McMillian speaking for our court said at page 801:

> It is . . . well settled in Missouri that "it is not improper for the police to immediately return a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before." [citations omitted]

See also *State v. Dodson*, 491 S.W.2d 334 (Mo. banc 1973). The circumstances in the instant case are somewhat similar to those in *State v. Jordan*, 506 S.W.2d 74 (Mo.App. 1974) wherein the police officers observed the burglars fleeing from the scene. They were apprehended a few blocks away, and they were returned to the scene where the officers made an identification. The only difference between the instant case and *Jordan* is that the so called "show up" was at the police station and not at the scene. Officer Thimling was positive in his identification, and the identification occurred within approximately 30 minutes of his observation. The procedure was neither impermissibly suggestive nor unfair. Moreover, even if the show-up confrontation *had* been improperly conducted, in this case the officer had an independent basis to support his in-court identification. *State v. Little*, 572 S.W.2d 871 (Mo.App.1978).

Affirmed.

GUNN and CRIST, JJ., concur.

