THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GHASSAN ABDELMASSIH, Defendant-Appellant.

Third District    No. 3—90—0344

Opinion filed August 23, 1991.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

A jury convicted the defendant, Ghassan Abdelmassih, of unlawful possession of a controlled substance with the intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)). The trial court subsequently sentenced him to six years' imprisonment. The defendant appeals. We affirm.

At trial, police officer Dennis Carey testified that on April 29, 1989, he participated in the execution of a search warrant at 613 Cochise Drive in Bolingbrook. Carey stated that he and several other officers entered the residence and found the defendant sleeping in a basement bedroom. While searching the room, Carey found substances he believed to be cocaine and marijuana in a desk drawer. Carey also found a triple-beam scale, a Right Guard container with a false bottom, and two paper snow seals. The defendant was subsequently placed under arrest.

Thereafter, in the living room of the defendant's residence, he was taken through the booking process, which included filling out a personal information form and a *Miranda* warning form. The personal information form requested the defendant's name, address, telephone number, previous address, race, height, weight, date of birth, place of birth, citizenship, social security number, driver's license number, employer, employer's address, occupation, previous employer's address, hair color, eye color, build, complexion, and other identifying information. Officer Carey testified that in response to the question on place of employment, the defendant stated he was unemployed and had last worked in December of 1987.

Richard Paulas testified that in July of 1989 he was working as a forensic scientist for the State crime lab. He tested People's exhibit 1 and found one packet contained 17.7 grams of a substance containing cocaine and the other packet contained 5.6 grams of a substance containing cocaine. Paulas determined the 17.7 gram sample was 92% pure cocaine. He also tested People's exhibit 2, consisting of two snow seals, and found they contained .5 and .2 grams of cocaine respectively.

Officer Paul Kaupas was qualified by the court as an expert witness. He testified that while searching the house at 613 Cochise Drive he found $413 in a wallet in the room where the defendant was sleeping. He also noted that 92% pure cocaine is typically not found in the possession of users. The most commonly delivered cocaine is 10% to 20% pure. Kaupas stated that 17.7 grams of 92% pure cocaine could be cut to produce more than 70 grams of street-quality cocaine with a value of up to $7,000. He further testified that a cocaine user needs only one line, or approximately .25 grams, to become under the influence of cocaine.

While admitting that the triple-beam scale, Right Guard can, and snow seals could be used for other purposes, Officer Kaupas testified they could all be characterized as drug paraphernalia. He concluded that in his opinion a person found with 17.7 grams of 92% pure cocaine, 5.6 grams of cocaine of an unknown purity, a dummy Right Guard canister, and two snow seals containing cocaine would be a drug dealer or distributor.

The only defense witness called was the defendant's nephew, John Ibrahim. He testified he lived with his parents at 613 Cochise Drive and the defendant occasionally stayed at their home. Ibrahim stated he had a large party at the home on April 22, 1989, when his parents were out of town. Approximately 60 people attended the party and many were in the room in which the defendant was found sleeping. Ibrahim did not see any people using cocaine at the party and made a point of checking to make sure that no drugs were going into the house. He noted he had never seen the defendant use or possess drugs.

During closing argument, the prosecutor told the jurors that in order to find the defendant innocent they would either (1) have to dismiss Officer Kaupas' testimony or (2) find that Officer Kaupas' testimony did not convince them beyond a reasonable doubt that the paraphernalia found in defendant's possession indicated an intent to deliver drugs. The prosecutor also told the jurors that if they believed Officer Kaupas and were persuaded by him, they should sign only the verdict form indicating that the defendant had been in possession of drugs with the intent to deliver.

On appeal, the defendant first argues that the trial court abused its discretion by qualifying Officer Kaupas as a narcotics expert capable of rendering an expert opinion regarding the defendant's intent. We disagree.

We begin by noting that Officer Kaupas did not testify as to the defendant's intent. He merely testified that the presence of certain

types of drugs and drug paraphernalia would indicate the drugs were for sale rather than for personal use. As such, Officer Kaupas' testimony did not extend beyond the subject matter in which the court qualified him as an expert.

As for whether the trial court acted properly in qualifying him as an expert on the subject of narcotics, we note that before ruling on the admissibility of expert testimony, the court must make two preliminary determinations. First, the court must determine whether the purported expert testimony is useful or relevant; and second, whether the witness is properly qualified to give the testimony sought. (*People v. Hanserd* (1985), 136 Ill. App. 3d 928, 483 N.E.2d 1321.) Determination of the sufficiency of an expert's qualifications rests largely within the sound discretion of the trial court. *People v. Einstein* (1982), 106 Ill. App. 3d 526, 435 N.E.2d 1257.

In the case at bar, Officer Kaupas testified he had been a police officer for 17 years. He attended and lectured at seminars on illegal substances and had five or six credit hours of courses relating to the effect of drugs on people. Additionally, he had been a shift commander for the violent crimes drug-suppression unit and had participated in approximately 600 narcotics arrests, of which 40% to 50% involved cocaine.

We find the trial court did not abuse its discretion in finding Officer Kaupas to be qualified as an expert witness on the subject of narcotics. His testimony was both useful and relevant. While a jury would be reasonably expected to know what cocaine is, it is doubtful it would have any expertise on cocaine distribution. Officer Kaupas was qualified to testify concerning the presence of various types of drugs and drug paraphernalia and what the combination of those items would tend to indicate regarding the distribution of cocaine. An expert witness is qualified to draw reasonable inferences from facts which the laymen jurors would not otherwise be competent to draw. *People v. Seaman* (1990), 203 Ill. App. 3d 871, 561 N.E.2d 188.

The defendant next contends that Officer Kaupas erroneously and prejudicially invaded the province of the jury by testifying that in his expert opinion the defendant intended to sell or distribute cocaine. We disagree.

We again note that Officer Kaupas did not testify as to the defendant's intent. He merely testified that the possession of certain types of drugs and drug paraphernalia would indicate the drugs were for sale rather than for personal use. However, even if Officer Kaupas' testimony were interpreted to be testimony as to the defendant's intent, any error stemming from that testimony would be harm-

less. The defendant in the instant case was in possession of a quantity and quality of cocaine far surpassing that ordinarily possessed by mere users. Additionally, he was found possessing paraphernalia characteristically associated with drug dealers. In light of the overwhelming evidence of the defendant's guilt, any error caused by the admission of Kaupas' statement was harmless beyond a reasonable doubt. *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301.

The defendant next argues the trial court erroneously allowed statements obtained from him in violation of his fifth amendment rights to be admitted into evidence, thereby denying him a fair trial. We disagree.

Defendant contends that since he had stated he did not want to make a statement, Officer Carey violated his fifth amendment rights by asking him about his previous employment history. Defendant further contends that Officer Carey's questioning exceeded the scope of any rational or proper booking process and was nothing more than an effort to gather incriminating evidence.

The Illinois Supreme Court addressed a similar issue in *People v. Dalton* (1982), 91 Ill. 2d 22, 434 N.E.2d 1127. In *Dalton*, the court held that a police officer's inquiry about the defendant's date of birth was not proscribed by *Miranda* and, consequently, the defendant's response was properly admitted. In support of its conclusion, the court cited over a dozen cases from other jurisdictions which held such inquiry is not barred. However, the court did note one case in which another jurisdiction did bar such inquiry. See *Proctor v. United States* (D.C. Cir. 1968), 404 F.2d 819.

The mere citation of *Proctor* by the Illinois Supreme Court in a case holding the opposite of *Proctor* is not sufficient to establish that Illinois has adopted the holding in *Proctor*. Therefore, we are not bound by the *Proctor* holding. Rather, we subscribe to the view recently espoused by the United States Supreme Court in *Pennsylvania v. Muniz* (1990), 496 U.S. 582, 110 L. Ed. 2d 528, 110 S. Ct. 2638. In that case, the Court concluded that the "routine booking question exception" exempts from *Miranda*'s coverage questions which are asked to secure biographical data reasonably related to the police's administrative concerns.

In the instant case, the question of employment is a standard question asked of all individuals during the booking procedure. This is not a situation in which the matter was broached for the purpose of obtaining incriminating evidence against the defendant. We therefore hold that under these circumstances Officer Carey's inquiry about the defendant's place of employment was not proscribed by *Miranda*.

The defendant's final argument is that prosecutorial misconduct occurred during closing argument. Defendant alleges the prosecutor misstated the law when he told the jury that in order to acquit the defendant, it would have to find the State's expert witness' testimony to be a "complete fabrication."

■■ This issue was not raised in the defendant's post-trial motion; thus, it has been waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Application of the waiver rule can be relaxed if the remark constitutes plain error. (134 Ill. 2d R. 615(a).) However, in the instant case, the evidence was not closely balanced nor do we find the error was of such magnitude that the accused was denied a fair trial. We therefore find the plain error exception does not apply.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

SLATER and HAASE, JJ., concur.