STATE of Missouri, Respondent,

v.

**Scott E. REAM, Appellant.**

No. 27562.

Missouri Court of Appeals,
Southern District,
Division One.

April 18, 2007.

Petition for Rehearing or Reconsideration and Transfer Denied May 10, 2007.

Application for Transfer Denied
June 26, 2007.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Cecily L. Daller, Office of Attorney General, Jefferson City, for respondent.

DANIEL E. SCOTT, Judge.

Appellant ("Defendant") appeals his jury conviction of second-degree drug trafficking, RSMo. § 195.223. We affirm.

On October 25, 2004, Corporal Jason Johnson of the Greene County Sheriff's Department was patrolling I–44 when he saw Defendant's car, bearing Arizona license plates, illegally driving in the passing lane, but not actually passing another vehicle. After observing the car twice driving on the center-line, Corporal Johnson pulled the vehicle over.

Corporal Johnson approached the car and noticed a hanging air freshener that he believed was being used to mask an odor in the car. The driver, Mr. Klinedinst, produced a driver's license but he did not have the car's registration. He indicated the car was owned by Defendant, who was in the backseat. Defendant claimed he bought the car from a friend, he had made three payments totaling $1500, but did not know how much he still owed. He had no registration papers for the car. When Corporal Johnson questioned Defendant and Klinedinst separately, both said they were headed from Arizona to Pennsylvania for vacation. Corporal Johnson thought the answers sounded "rehearsed" and that both men seemed overly nervous.

Missouri State Highway Patrol K–9 officer Thomas Hall stopped to offer help. Corporal Johnson told him that he was suspicious of the vehicle, for reasons detailed later in this opinion. Trooper Hall took his dog around the car and it "indicated" by scratching on three places including the trunk. Corporal Johnson opened the trunk and found two small duffle bags atop two large metal containers. The containers held 111 pounds of marijuana. Corporal Johnson arrested Defendant, read him his *Miranda*[1] rights, and Defendant invoked his right to remain silent.

Greene County Deputy Scott Horn drove Defendant to jail and booked him. The booking process included a series of questions, which Defendant answered, from the department's standard booking form. These included his name, date of birth, sex, race, height, weight, eye and hair color, social security number, driver's license state, address, phone, birthplace, employer, and occupation. At trial, defense counsel sought to suppress Defendant's answer that he was unemployed.[2] After an evidentiary hearing, the motion was denied. Defense counsel renewed the objection when the evidence was offered at trial, via a single question and answer comprising three lines of transcript.

Defendant claims the State's use at trial of his "unemployed" book-in response violated his Fifth Amendment rights. Specifically, Point I asserts that "employment" questions "do not properly fall within the booking exception to *Miranda*," although Defendant cites no case so holding.

Missouri courts, and many others, have considered routine booking questions in

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Defendant also sought to suppress his address in Nogales, Mexico, but does not raise that issue on appeal.

light of *Miranda*. Some courts hold such questions are not interrogation, so *Miranda* never applies, while other courts consider them interrogation falling within a *Miranda* exception. In *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), four justices essentially took the first position, and four others the second. *Id.* at 606–08, 600–02, 110 S.Ct. 2638. Despite disagreement on the underlying basis, however, "no court addressing the issue since *Muniz* has rejected the routine booking exception." *Dixon v. Commonwealth*, 149 S.W.3d 426, 432 (Ky.2004)(citing cases).

Missouri cases, back to 1974, tend to fall into the first ("not interrogation") camp. *See, e.g., State v. Isaiah*, 874 S.W.2d 429, 436–37 (Mo.App.1994)(routine booking questions not designed to elicit inculpatory statements do not constitute interrogation proscribed by *Miranda* ); *State v. Jordan*, 506 S.W.2d 74, 83 (Mo.App.1974)(same). *See also State v. Mitchell*, 999 S.W.2d 247, 254 (Mo.App.1999)(general questions about height, weight, and other background information are not interrogation for *Miranda* purposes), *overruled on other grounds, State v. Withrow*, 8 S.W.3d 75 (Mo. banc 1999).

Defendant's Point I concedes the booking exception, but claims that "employment" questions, specifically, are excluded. *State v. Larson*, 623 S.W.2d 69, 72 (Mo. App.1981) says otherwise, but only in dicta. Neither *Muniz*, nor Missouri cases to date, involved or specifically considered "employment" booking questions. However, cases from four federal circuits and at least seven state courts have done so, and have ruled against Defendant's position. *See United States v. Duarte*, 160 F.3d 80 (1st Cir.1998); *United States v. Gotchis*,

803 F.2d 74, 79 (2d Cir.1986); *Farley v. United States*, 381 F.2d 357 (5th Cir.1967); *United States v. McLaughlin*, 777 F.2d 388 (8th Cir.1985); *English v. State*, 260 Ga.App. 620, 580 S.E.2d 351 (2003); *State v. Rassmussen*, 92 Idaho 731, 449 P.2d 837 (1969); *People v. Abdelmassih*, 217 Ill. App.3d 544, 160 Ill.Dec. 536, 577 N.E.2d 861 (1991); *Dixon v. Commonwealth*, 149 S.W.3d 426 (Ky.2004); *Clarke v. State*, 3 Md.App. 447, 240 A.2d 291 (1968); *People v. Rodney*, 85 N.Y.2d 289, 624 N.Y.S.2d 95, 648 N.E.2d 471 (1995); *Mayes v. State*, 870 S.W.2d 695 (Tex.App.1994).[3] Some of these opinions include extensive and persuasive analysis supporting their conclusions, which for brevity's sake we will not detail. For illustrative purposes, however, we will briefly mention three cases with similarities to ours.

The defendant in *McLaughlin* also faced charges relating to drug distribution, and his answer to his "employment" book-in question also was used against him at trial. The Eighth Circuit rejected his Fifth Amendment challenge:

[C]ases demonstrate that a request for routine information necessary for basic identification purposes is not interrogation under *Miranda*, even if the information turns out to be incriminating. Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged, will the questioning be subject to scrutiny.

The pretrial services officer's request that McLaughlin supply his place of employment and home address was made because employment and length of resi-

---

**3.** *Rassmussen, Farley,* and *Clarke* also were cited with approval by our Eastern District

colleagues in *Jordan* (506 S.W.2d at 82–83).

dence in the community are factors properly considered in determining whether to detain or release a criminal suspect pending trial. Such an inquiry constitutes a request for basic identification information. The officer could not have expected the inquiry to elicit an incriminating response. Indeed, the information as to residence and employment had no relevance to the offenses of which McLaughlin was charged. Therefore, in this case the questioning did not for Miranda purposes constitute interrogation.

777 F.2d at 391–92 (internal citations omitted). Similar Eighth Circuit holdings include *U.S. v. Jones,* 266 F.3d 804, 812 (8th Cir.2001) and *U.S. v. Keeper,* 977 F.2d 1238, 1242 (8th Cir.1992).

*Dixon* is a 2004 drug trafficking case remarkably similar to ours. The defendant invoked his *Miranda* rights when arrested. At the police station, while answering routine booking questions, he said he was unemployed. At trial, the state offered that admission, and $193 cash found on the defendant's person, as additional circumstantial evidence that he was a drug trafficker. 149 S.W.3d at 428. The Kentucky Supreme Court recognized the booking exception's specific application to employment questions (*Id.* at 432), yet that did not end the inquiry. A further issue was whether the police deliberately sought incriminating information under the guise of routine booking, since *Muniz* indicates the exception does not cover questions "designed to elicit incriminatory admissions." *Id.* at 433 (*quoting Muniz,* 496 U.S. at 602 n. 14, 110 S.Ct. 2638). The trial court had held a suppression hearing and concluded the employment question was "not geared to elicit an incriminating response." That factual finding, supported by substantial evidence, was conclusive of the issue. *Id.*

The defendant in *English,* charged with possessing drugs with intent to distribute, was arrested with $565 on his person, but answered "unemployed" in his book-in questions. At the suppression hearing, the booking officer described the "administrative paperwork" he filled out on the defendant and all arrestees. It sought "name, date of birth, address, the relatives, occupation, education level, things of that nature," not to gather incriminating responses, but to "be able to track that person, find them later, be able to keep up with them." 580 S.E.2d at 354. The "occupation" question was upheld based on "the context of the questioning, the officer's intent, and the relationship of the question to the crime." *Id.*

Likewise, our trial court held a suppression hearing on this issue. Deputy Horn explained how he had transported Defendant and hundreds of others to jail in his career. An information sheet always had to be completed, and he identified the one he completed for Defendant. It was a normal booking procedure, required by the jail in every case, regardless of the charge. The jail would not accept anyone without the information on that form. It was strictly an administrative document for the jail's use. Deputy Horn did not converse with Defendant, except to ask the questions on the sheet, since it was not his business to have conversation with arrestees.

After hearing the testimony, the trial court recessed to read case law cited by the parties, then reconvened for argument. The court and attorneys discussed *Isaiah, Jordan,* and *Muniz,* and specifically whether the employment question was "designed to elicit incriminating admissions" as proscribed by *Muniz.* Our trial court found otherwise:

THE COURT: Yeah, I agree [it is admissible]. The problem is it's not in-

terrogation for *Miranda* purposes. There are legitimate purposes for your address and your employment so you can notify your family and your employer that you may not be able to come into work. I mean, that's absolutely not a— incriminating-seeking. You look at it on the front end, not after the fact, to see whether it's incriminating. You ask, is this misconduct, because if there's a violation of *Miranda*, it's misconduct, that's when we apply the exclusionary rule to punish that.

But there's no misconduct here. They're using the jail form with perfectly legitimate questions on there. And so State's motion—excuse me. Defendant's motion to suppress will be denied.[4]

We admit some ambivalence. It is one thing to collect booking information after a defendant asserts *Miranda* rights, and another to use it at trial. But the issue before us is not merely one of policy, nor what we might choose or prefer, but what the federal constitution forbids. The Supreme Court, our Missouri courts, and virtually everyone agrees at least some good-faith booking questions are exempt from *Miranda*. Defendant concedes this, but argues that "employment" questions remain *Miranda*-protected. Yet Defendant cites no case so holding, and at least eleven federal and state courts have concluded otherwise. Those courts may not bind us, but we cannot claim greater authority or ability to interpret the federal constitution.

Since our trial court has determined the police obtained this information without misconduct or improper motive, we cannot convict the court of constitutional error in admitting it, unless we go against virtually every reported case, and perhaps forge new federal constitutional law.

Moreover, and equally important, the limited mention of Defendant's unemployment was "neither crucial to nor did it bear heavily upon the determination of his guilt." *Jordan*, 506 S.W.2d at 83 (no error or prejudice in using defendant's social security number, obtained through routine booking questions, to link him to the crime, as there was ample independent evidence to convict). During a two-day trial—over 400 pages of transcript in the jury's presence—everything the jury heard about "unemployment" could fit a single transcript page, and be read aloud in about a minute. The State instead hammered the truly damning evidence, of which there was plenty,[5] starting with two four-foot tall, specially built, sealed metal containers, weighing 150 pounds, containing 111 pounds of marijuana worth over $100,000, hidden under duffel bags in Defendant's trunk. Everything was sealed to hide the smell, and a strong deodorizer was used inside the car for extra protection. Defendant had no registration or paperwork for his car, a common practice of drug runners to avoid a paper trail. There were two police scanners and three cell phones in the car, a single key in the

---

4. Compare the New York court's conclusion in *Rodney* (624 N.Y.S.2d 95, 648 N.E.2d at 474):

> The arresting officer's question was part of a routine booking form and was reasonably related to such administrative concerns as assignment of counsel, setting of bail, and the arraigning court's determination whether to release defendant on his own recognizance (*accord, United States v. McLaughlin, supra*).... Although the question about de-

fendant's occupation is arguably related to the conduct for which defendant had been arrested, it was not a disguised attempt at investigatory interrogation, and was not reasonably likely to elicit an incriminating response from defendant.

5. Indeed, the State had all the evidence, as Defendant offered no evidence and called no witnesses.

ignition (no key ring or other keys), and empty bottles and food wrappers on the floor. Despite 111 pounds of marijuana sealed and hidden in the trunk, there was no loose marijuana or drug paraphernalia in the car or on its occupants. Defendant and his companion were so nervous that, although it was late October, their foreheads were sweating. Given the overwhelming and essentially uncontroverted proof that Defendant was hiding and hauling 111 pounds of marijuana, using odor control, in a car with no paperwork and just one key, carrying multiple police scanners and cell phones, with a lame vacation story, and sweating with nervousness when the police stopped him, the limited mention of his unemployment was not prejudicial. Point I is denied.

We also deny Defendant's Point II challenge to Detective Westbrook's testimony on the marijuana's street value. The trial court did not abuse its wide discretion in admitting such evidence, which is relevant to knowledge and intent issues in drug cases. *See, e.g., State v. Smith,* 97 S.W.3d 560, 563 (Mo.App.2003).

We affirm the conviction.

PARRISH, J., concurs.

RAHMEYER, P.J., dissents in separate opinion.

NANCY STEFFEN RAHMEYER, Presiding Judge, dissenting.

I respectfully dissent. In the context of this case, I would find that when Appellant invoked his right to remain silent in this drug trafficking case, it was a violation of his privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Missouri Constitution to use the information of his employment status as obtained on the booking form against him at trial.

Furthermore, I would conclude that the admission of employment information was not harmless beyond a reasonable doubt.

The privilege against self-incrimination has been described as: "a precious right [ ] ... fixed in our Constitution only after centuries of persecution and struggle," "one of our Nation's most cherished principles," a "hallmark of our democracy," and an "essential mainstay of our adversary system." *Miranda,* 384 U.S. 436, 442, 457–60, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As eloquently stated by Chief Justice Warren:

> [T]he constitutional foundation underlying the privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens. To maintain a "fair state-individual balance," to require the government "to shoulder the entire load," to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth.

*Id.* at 460, 86 S.Ct. 1602 (internal citations omitted). Furthermore, the Court has a tradition of according the privilege a liberal construction. *Id.* at 461, 86 S.Ct. 1602. In keeping with this venerable tradition, claimed violations of an accused's privilege against self-incrimination merit rigorous scrutiny.

It is clear that before interrogating a suspect in custody, police officers must advise him of his right to remain silent, that anything he says can and will be used against him, that he has a right to an attorney, and an attorney will be provided for him in the event he cannot afford one. *Id.* at 444, 86 S.Ct. 1602. Absent a knowing and voluntary waiver of these rights, a

suspect's responses are inadmissible against him in later criminal proceedings. *Id.* at 479, 86 S.Ct. 1602. *Miranda's* protections are only triggered when a suspect is in custody and is interrogated, that is, "subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *see also State v. Glass*, 136 S.W.3d 496, 508 (Mo. banc 2004).

In *Innis*, the U.S. Supreme Court sought to clarify the definition of interrogation under *Miranda*,

> "[I]nterrogation" . . . refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. . . . A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Innis*, 446 U.S. at 301–02, 100 S.Ct. 1682.

In determining whether the information sought by a booking officer falls within the benign category of permissible booking questions or an unconstitutional interrogation, i.e., whether the question is reasonably likely to elicit an incriminatory response, courts have reviewed a variety of different factors. In rendering a decision in the present case, I would look to these cases and conduct a "totality of the circumstances" review.

A protracted analysis is not necessary for this dissenting opinion; however, to convict Appellant of trafficking in the second degree, the State was required to prove that Appellant knowingly "possesse[d] or ha[d] under his control . . . more than thirty kilograms or more of a mixture or substance containing marijuana." Section 195.223.7[1]; *State v. Carson*, 941 S.W.2d 518, 523 (Mo. banc 1997) ("[K]nowledge must be the mental state for trafficking in the second degree."). "The closer the connection between the crime in question and the information sought, the stronger the inference that the [police officer] should have known that [the] inquiry was reasonably likely to elicit an incriminating response from the suspect." *Hughes v. State*, 346 Md. 80, 695 A.2d 132, 140 (1997); *see also U.S. v. McLaughlin*, 777 F.2d 388, 391–92 (8th Cir.1985) (ruling that a booking question is subject to scrutiny if it is "directly relevant to the substantive offense charged."). "[W]here a purportedly routine booking question provides some proof of an element of the crime for which the suspect is arrested, the booking question exception will be less likely to apply." *Hughes*, 695 A.2d at 140.

Appellant's unemployment permits a reasonable inference that he supported himself by transporting drugs across the country. This inference supports the *scienter* element of the State's case. Despite Respondent's insistence in its brief that "[w]hether or not Appellant was employed did not make it more or less likely that he was guilty of the charged offense," the Prosecutor certainly seized upon this correlation numerous times during her closing argument:

---

1. All references to statutes are to RSMo 2000, unless otherwise specified.

Klinedinst may be a driver, but it's [Appellant] who's controlling the car. The unemployed [Appellant [2]]. Tells the police he's unemployed.

. . . .

[Appellant's] unemployed.

. . . .

Doesn't sound so much like a vacation as it does like a job. [Appellant's] making a run.

. . . .

$550, the unemployed [Appellant] has in his hand. And he has bought or he is transporting $100,000 worth of dope in his car. That's not a vacation, that's a job. That's what [Appellant] is doing.

. . . .

This unemployed fellow [Appellant] whose [sic] buying this car.

Simply because the employment status question was asked of every person detained in the Greene County Jail does not purge the question of a Constitutional violation.[3] Simply putting a question on a standardized booking form and asking it of every suspect arrested does not shield it from Constitutional scrutiny. Respondent attempts to legitimize the employment question by claiming such a question satisfies an "administrative requirement" imposed by the Greene County Jail; however, it fails to specifically identify what legitimate end that "administrative requirement" satisfies. The employment status question is clearly distinguishable from the other booking questions Deputy Horn asked: name, social security number, date of birth, gender, hair color, eye color, weight, and ethnicity. It is clear how such questions appear to legitimately "aid [ ] the police in maintaining records which properly identify those arrested." *Jordan*, 506 S.W.2d at 83. In contrast, I do not see, and Respondent has not demonstrated, how knowing a suspect's employment status is related to the police's administrative concerns of record keeping and identification of those arrested. The very fact that the State used Appellant's response that he was unemployed to prove an element of its case at trial casts suspicion on Respondent's "administrative use" argument.

It is fundamentally unjust for Appellant to be told he has the right to remain silent, to allow Appellant to assert that right, to insist that Appellant give routine identification information for "booking" purposes, and then use that information against him to prove an element of the State's case at trial. I would conclude that when Appellant invoked his right to remain silent in this drug trafficking case, it was a violation of his privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Missouri Constitution to use the information of his employment status as obtained on the booking form against him at trial.

The determination that the evidence of Appellant's employment status was admitted in error does not end the inquiry. "A properly-preserved federal constitutional error in a criminal trial does not require reversal and remand for a new trial if the reviewing court determines that the error

---

2. The Prosecutor actually referred to Mr. Klinedinst here, however, it is clear from the context of the argument that she intended to refer to Appellant.

3. In determining the applicability of *Miranda*, Missouri courts have considered whether a question was part of a police department's routine booking procedure as one factor in its overall analysis. *State v. Jordan*, 506 S.W.2d 74, 83 (Mo.App.St.L.D.1974); *State v. Isaiah*, 874 S.W.2d 429, 436 (Mo.App. W.D.1994). I do not dispute that the routine nature of a question is a legitimate factor to consider, however, it is not controlling.

was harmless beyond a reasonable doubt." *State v. Lopez,* 128 S.W.3d 195, 201 (Mo. App. S.D.2004) (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The State carries the burden of proving that the error did not contribute to the verdict obtained. *Id.* This Court must decide whether the " 'erroneously admitted evidence so influenced the jury that, when considered with and balanced against all the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence.' " *State v. Barriner,* 34 S.W.3d 139, 150 (Mo. banc 2000) (quoting *State v. Roberts,* 948 S.W.2d 577, 592 (Mo. banc 1997)).

I cannot say that the trial court's error in admitting Deputy Horn's testimony regarding Appellant's employment status obtained during booking was harmless beyond a reasonable doubt. Despite the evidence presented as to the quantity and value of the marijuana found in Appellant's car, which was being driven by Mr. Klinedinst, there was not "plenty" of remaining evidence.

With all due respect to the majority's analysis, I am skeptical of the evidence it cites as overwhelming proof of Appellant's complicity in a trafficking scheme. The majority states as one sign of "truly damning evidence" that the officers in the present case did not discover any drugs or drug paraphernalia in the passenger compartment of the car or on the passengers themselves. I do not understand how that fact supplies the element of knowledge to Appellant. Additionally, I do not give such a sinister interpretation of a single key in the ignition (without a key ring or other keys) and empty bottles and food wrappers on the floor of the car. Courts in this state have recognized the presence of food wrappers as part of a normal cross country trip. *State v. Woolfolk,* 3 S.W.3d 823, 829 (Mo.App. W.D.1999) (noting that the presence of food wrappers in cars is common in this "era of carry-out dining and cannot serve to separate the suspicious from the innocent traveler"); *State v. Smith,* 926 S.W.2d 689, 693–94 (Mo.App. S.D.1996) (concluding that the presence of junk food wrappers, water jug and map in car did not create basis for suspicion of criminal activity). Similarly, the "knee jerk" conclusion that Appellant was sweaty and nervous because he was guilty, departs from Missouri precedent. *State v. Barks,* 128 S.W.3d 513, 517 (Mo. banc 2004) (discussing that an officer's perception that driver appears nervous does not, by itself, give rise to a reasonable suspicion to justify detaining driver for further inquiry); *Woolfolk,* 3 S.W.3d at 829 (ruling that "[n]ervousness alone does not give rise to reasonable suspicion, although, together with other factors, it can be relevant in determining whether reasonable suspicion exists under the totality of the circumstances."); *State v. Richmond,* 133 S.W.3d 576, 580 (Mo.App. S.D.2004) (concluding that defendant's nervousness, food containers and an atlas in the passenger compartment, and the defendant's claim he was traveling from Los Angeles to Michigan, did not support the officer's belief that criminal activity was afoot). Finally, Corporal Johnson's suspicion of Appellant's and Mr. Klinedinst's stories because they were too similar, leads me to question whether travelers in this state are doomed regardless of what they say, in that the State repeatedly cites motorists' *inconsistent* stories as a cause for concern. *See State v. Burkhardt,* 795 S.W.2d 399, 405–07 (Mo. banc 1990) (upholding the warrantless search of automobile when the officer grew suspicious of its occupants when, *inter alia,* the passengers in the car told conflicting stories); *State v. Joyce,* 885 S.W.2d 751, 753–57 (Mo.App. S.D.1994)

(concluding that the law enforcement officer was justified in asking for consent to search automobile when, among other things, the passengers told inconsistent stories about their destination).

To be clear, I would not hold that police officers cannot ask legitimate booking questions of a suspect in custody. Rather, I believe that the procedural requirements dictated by *Miranda* are more than a meaningless formality. When a suspect asserts his constitutionally-protected right to remain silent, it should not be without effect. Accordingly, I would conclude Appellant asserted his right to remain silent, and an officer asked, in the context of his booking, a question, which deviates from those questions *clearly necessary* to legitimately aid the police in maintaining records which properly identify those arrested; therefore, a fundamental privilege was violated. I would further find that the admission enabled the Prosecutor to refer to Appellant's employment status five times in the context of her argument that Appellant had to know the marijuana was in the car. Because Appellant's employment status weighed heavily as proof that he knowingly transported the drugs, the error was not harmless. Appellant's response to the booking questions should not have been admitted at trial to be used against him as an essential element of the crime. I would reverse and remand for a new trial.