

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107999 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | 1611-CR04052-01 |
| | ) | |
| LARRY E. NORTHCUTT, | ) | Honorable Deborah J. Alessi |
| | ) | |
| Appellant. | ) | Filed:  September 29, 2020 |

Angela T. Quigless, P.J., Kurt S. Odenwald, J., and James M. Dowd, J.

## OPINION

Larry Northcutt was convicted following a January 2019 jury trial in the Circuit Court of St. Charles County of one count of murder in the first degree, § 565.020,[1] and one count of armed criminal action, § 571.015, in connection with the July 23, 2016 stabbing death of Victim Chris Gernigan.  In this appeal, Northcutt raises two claims of trial court error.  In Point One, Northcutt claims the trial court plainly erred in admitting the testimony of Detective Splittorff regarding certain cellular phone messages between Northcutt and an associate that were exchanged around the time of the murder because the messages were hearsay.  In Point Two, Northcutt claims the trial court erred in admitting Northcutt's statement to Detective O'Neill that

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated.

revealed his cellular phone number because he made the statement to the detective before he had been *Mirandized*. Finding no error, we affirm.

## Background

The evidence viewed in the light most favorable to the verdict is as follows: Just after midnight on July 23, 2016, Victim Chris Gernigan died on the side of Highway 67 near West Alton, Missouri after Northcutt fatally stabbed him in the chest. The prosecution relied heavily on (1) cell phone records, text message records, and surveillance video that helped investigators establish the relevant locations and movements of the Victim and Northcutt, (2) incriminating statements Northcutt made during text message conversations with two witnesses, and (3) Northcutt's statement to the police after he waived his *Miranda* rights.

On July 22, 2016, Victim, who lived in Roxanna, Illinois, was trying to get a ride to his girlfriend Kaylyn Davis's home in Alton, Illinois, approximately 12 miles away. Natasha Smith, a mutual friend of both Victim and Northcutt, eventually agreed to drive Victim to Davis's home. Surveillance video at a convenience store in Wood River, Illinois, a town near Roxanna, showed Victim getting picked up by Smith at 12:13 a.m. on July 23rd. Unknown to Victim, Smith had agreed to allow Northcutt to hide in the trunk of the vehicle. During the ride, Northcutt exchanged text messages with both Smith and with another person named Tara Clark. To Clark, Northcutt boasted from inside the trunk that he "got this bitch today," and told Clark the next day that "I did it, I got him."

In his statement to the police after he waived his *Miranda* rights, Northcutt stated that when Smith stopped the car on the side of Highway 67 near West Alton, Missouri,[2] Northcutt got

---

[2] West Alton, Missouri is on the opposite side of the Mississippi River from Alton, Illinois. Victim told Davis that Smith said she was going to cross over the bridge to the Missouri side to get gas since it was apparently cheaper in Missouri before taking Victim to Davis's home.

out with his knife drawn, confronted Victim, and stabbed Victim in the chest. Northcutt claimed he stabbed Victim only after he saw a shiny object in Victim's hand.

Victim's girlfriend Davis, for her part, called Victim at 12:27 a.m. on his cellular phone. Victim told her he found a ride and was on his way. Davis heard a female voice in the background then heard Victim scream. The connection was lost and her efforts to call back unsuccessful. Eight minutes later, Victim's friend Timothy Booth called Victim's phone. Northcutt answered. Booth said he was surprised because Victim and Northcutt did not get along well. Northcutt told Booth that Victim might need some help back on the side of the road but Northcutt would not provide Booth with Victim's location despite Booth's repeated requests. Eventually, Victim was sighted by a passing truck driver who called 911.

## Standard of Review

A trial court's decision regarding the admissibility of evidence is reviewed for an abuse of discretion. *State v. Winfrey,* 337 S.W.3d 1, 5 (Mo. banc 2011). A trial court abuses its discretion only if its decision to exclude evidence is "clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Mitchell v. Kardesch,* 313 S.W.3d 667, 675 (Mo. banc 2010). Evidentiary error is reviewed "for prejudice, not mere error," and error is only prejudicial if the court's error affected the outcome of the trial with "reasonable probability" and deprived the defendant of a fair trial. *State v. Clark,* 364 S.W.3d 540, 544 (Mo. banc 2012).

## Analysis

1. Point One – Northcutt's text messages with Smith

Northcutt concedes that he failed to object to the admission of the text messages at issue which were contained in State's exhibit 42 and therefore he seeks our review for plain error.

3

Supreme Court Rule 30.20 grants this Court the authority to consider "plain errors affecting substantial rights." *See State v. DeWeese*, 79 S.W.3d 456, 457 (Mo. App. W.D. 2002). Under Rule 30.20, plain error review involves a two-step process. *State v. Kidd*, 75 S.W.3d 804, 811 (Mo. App. W.D. 2002). First, the reviewing court must determine whether plain error has occurred. *DeWeese*, 79 S.W.3d at 457. Plain error is error that is evident, obvious, and clear. *Id.* Second, if this Court finds that plain error occurred, it may reverse if it concludes that the error resulted in a miscarriage of justice or a manifest injustice, which requires more than a mere showing that the defendant was prejudiced. *State v. Creamer*, 161 S.W.3d 420, 427 (Mo. App. W.D. 2005). To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show that the error was outcome determinative. *State v. Wood,* 580 S.W.3d 566, 579 (Mo. banc 2019).

We are dubious whether Northcutt is entitled even to plain error review. He told the court that he had no objection to the admission of the text messages exchanged between he and Smith. Plain error review does not apply when a party affirmatively states that it has no objection to evidence an opposing party is attempting to introduce. *State v. Johnson,* 284 S.W.3d 561, 582 (Mo. banc 2009).

Nevertheless, even if we were to consider plain error review, Northcutt is not entitled to any relief because he cannot make the required showing of a manifest injustice or miscarriage of justice since the alleged hearsay contained in those text messages was merely cumulative to the testimony Detective Splittorff had already offered. "An allegedly wrongful admission of hearsay evidence does not constitute plain error if such testimony is merely cumulative to other evidence properly admitted." *State v. Goodwin*, 43 S.W.3d 805, 818 (Mo. banc 2001). When the State sought to question Detective Splittorff regarding the contents of the challenged text messages,

4

the detective had already testified in detail, based on other properly admitted phone records, regarding Northcutt's and Smith's cell phone locations during the time of the murder and furthermore, the contested text messages were similar in tone to those between Northcutt and Clark which had previously been admitted.

Likewise, the Northcutt-Smith text messages were largely cumulative inasmuch as Northcutt confessed voluntarily to police that he was in the trunk of Smith's vehicle, that he and Smith had exchanged text messages during that time, and that he had stabbed Victim. *See Id.*

2. Point Two – Northcutt's pre-*Miranda* disclosure to police of his cell phone number

Northcutt claims the trial court erred in admitting his statement to Detective O'Neill in which he disclosed his cellular phone number before the detective had given Northcutt the *Miranda* warnings.

At the outset, we are again doubtful whether Northcutt preserved this claim of error. While Northcutt indeed moved pretrial to suppress his statement to the detective which contained his cell phone number, he was still required to make a specific objection when the evidence was offered at trial in order to preserve the issue for appellate review. *State v. Cook*, 273 S.W.3d 562, 568 (Mo. App. E.D. 2008). Here, Northcutt's objection when the statement was introduced at trial was "[s]ubject to what we put on the record already no additional objection." From our review of the record, it is not altogether clear to what this statement refers and whether it may be considered. But we will give Northcutt the benefit of the doubt and consider the merits of this point of error.

So, regarding the trial court's decision to allow into evidence his statement to the investigating officer that included his cell phone number, we consider both the evidence presented at the suppression hearing as well as at trial to determine whether sufficient evidence

5

exists in the record to support the trial court's ruling. *State v. Gaw*, 285 S.W.3d 318, 319 (Mo. banc 2009). The facts and the reasonable inferences from those facts are considered favorably to the trial court's ruling, and contrary evidence and inferences are disregarded. *Id.* Deference is given to the trial court's superior opportunity to determine the credibility of witnesses. *Id.* at 320. This Court gives deference to the trial court's factual findings but reviews questions of law de novo. *Id.*

Viewed in that context, Northcutt's claim is without merit for at least three reasons. First, at the stage of the investigation in which Northcutt made the statement at issue, *Miranda* warnings were not required. Questions designed to elicit basic background and pedigree information are within the "routine booking exception" to *Miranda* and Missouri courts have held that questions seeking background information on a defendant do not constitute interrogation under *Miranda*. *See State v. Ream*, 223 S.W.3d 874, 875-76 (Mo. App. S.D. 2007).

Second, the record here demonstrates that investigators were already aware of Northcutt's phone number so therefore his claim at best would be considered harmless error. Under the harmless error standard, the State must demonstrate beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *State v. Ramirez*, 447 S.W.3d 792, 797 (Mo. App. W.D. 2014). And when evidence challenged on constitutional grounds is cumulative of other properly admitted evidence, the disputed evidence could not have contributed to the defendant's conviction and is harmless beyond a reasonable doubt. *Id.* at 798.

Finally, Northcutt gave a post-*Miranda* confession that he was in the trunk of the car and that he stabbed Gernigan. He does not challenge the admissibility of that confession. Given that confession, Appellant's acknowledgement of his phone number cannot be said to have contributed to the verdict.

6

## Conclusion

Finding no error, we affirm the judgment of the trial court.

_____
James M. Dowd, Judge

Angela T. Quigless, P.J., and
Kurt S. Odenwald, J., concur.